THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| In re CHARLES C. WALDO and ETHANNE S. WALDO,  <br><br> Debtors. | **MEMORANDUM OPINION AND ORDER** |
| CHARLES C. WALDO; ETHANNE S. WALDO, <br><br> Appellants, <br><br> v. <br><br> THE BANK OF NEW YORK MELLON TRUST COMPANY; and OCWEN LOAN SERVICING, LLC, <br><br> Appellees. | Case No. 2:20-cv-00238-DBB <br><br> District Judge David Barlow |

Charles C. and Ethanne S. Waldo (collectively, Waldo) appeal certain orders of the United States Bankruptcy Court, District of Utah (the Bankruptcy Court).[1] Waldo sought to prevent the loss of his home by filing the 2008 bankruptcy case underlying this appeal. The property nevertheless sold in foreclosure in 2009 after the Bankruptcy Court granted summary judgment to the mortgage trustee, granted it relief from the automatic stay, and dismissed the bankruptcy petition. Undeterred, Waldo asked the Bankruptcy Court on multiple occasions to reconsider its decision and he prosecuted multiple appeals of the denials.

In the instant appeal—the third to challenge the dismissal of his bankruptcy case—Waldo contests the denial of his motion to reopen the bankruptcy proceedings based upon a theory of

---

[1] *See* Notice of Appeal, ECF No. 1.

fraud upon the court as well as the denial of his motion for reconsideration.[2] Waldo also filed three separate motions in this appeal seeking: (1) to exclude appellees and their legal counsel, (2) to disallow judicial notice, and (3) to disallow corporate disclosure statement.[3] As discussed below, the court denies each motion and, because it did not exceed its discretion, the Bankruptcy Court is affirmed.

## BACKGROUND

Appellants, as mortgage trustors, executed a trust deed and promissory note (collectively, the Loan) on August 20, 1998 for real property.[4] Following a series of transfers, The Bank of New York Mellon Trust Company, NA (New York) became the Indenture Trustee for the IMC Home Equity Loan Owner Trust 1998-7, the beneficiary of the Loan at the time of Waldo's bankruptcy.[5] Ocwen Loan Servicing, LLC (Ocwen) began servicing the loan in December 1998 as successor in interest to Ocwen Federal Bank FSB.[6]

---

[2] *See generally* Appellant's Principal Brief, ECF No. 15.

[3] ECF Nos. 5, 9, 10. In another motion, Waldo requests an order of discovery in the instant appellate proceeding. ECF No. 20. Citing Rule 26 of the Federal Rules of Civil Procedure, Waldo requests a host of materials and information from Appellees. *Id.* at 2–3. However, this matter is before the court in an appellate posture and this forum is thus inappropriate for the development of additional evidence. *See* 28 U.S.C. § 158(c)(2) (requiring that bankruptcy appeals heard by the district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules"). "Appellate courts do not retry the facts and rarely receive new evidence." *In re Taylor*, 495 B.R. 28, 35 (B.A.P. 10th Cir. 2013). Indeed, "the court below has the exclusive function of appraising credibility, determining the weight to be given testimony, drawing inferences from facts established, and resolving conflicts in the evidence." *Holdeman v. Devine*, 572 F.3d 1190, 1192 (10th Cir. 2009) (brackets, citation, and internal quotation marks omitted). Accordingly, the discovery request must be denied.

[4] Doc. 92 at ¶¶ 1, 2. The documents in the appellate record will be referred to by the document number assigned in the Bankruptcy Court. *In re Charles Coulsen Waldo and Ethanne S. Waldo*, Bankr. No. 08-23583. Documents filed with the district court will be referred to using "ECF No. ##."

[5] Doc. 92 at ¶ 3; Doc. 72 at ¶ 5.

[6] Doc. 92 at ¶ 4.

On June 5, 2008, Waldo filed a voluntary Chapter 13 Bankruptcy Petition and submitted a proposed Chapter 13 Plan.[7] New York and Ocwen submitted a proof of claim to the Loan secured by real property (Proof of Claim).[8] Appellees objected to Waldo's Chapter 13 Plan on the grounds that it "does not provide any treatment for Creditor's arrearage claim as set forth in Creditor's Proof of Claim, nor provide for ongoing monthly payments pursuant to the Trust Deed and Note."[9] Waldo objected to Appellees' Proof of Claim, citing alleged misrepresentation and fraud related to Ocwen's servicing of the loan.[10]

On October 6, 2008, Appellees moved for summary judgment asserting that they had acquired a valid security interest in Appellants' real property.[11] Appellees also requested termination of or relief from the automatic stay with respect to Appellants' real property.[12] On November 25, 2008, the Bankruptcy Court granted summary judgment to New York, overruled Waldo's objection to New York's claim, terminated the automatic stay with respect to the property, and found that Waldo filed the Chapter 13 petition "as part of a scheme to delay, hinder,

---

[7] *See generally* Doc. 1 (Bankruptcy Petition); Doc. 4 (Chapter 13 Plan).

[8] *See* Docs. 13, 17, 20. Appellees' mortgage claim was registered as Proof of Claim No. 4 in the amount of $143,922.39. *See* Doc. 13; Doc. 36 at 36–45. On August 18, 2008, New York submitted an amended Proof of Claim, which was registered as Proof of Claim 4-2. *See* Doc. 72 at 2 n.1; *see also* Doc. 87 at 1 (acknowledging filing of the amended Proof of Claim 4 on August 18, 2008).

[9] Doc. 17.

[10] Doc. 20 at 1.

[11] *See* Docs. 91, 92. Appellees asked the Court to overrule Appellants' objection to their Proof of Claim.

[12] Doc. 92 at 21–22; *see* 11 U.S.C. § 362(a) (imposing a stay to actions against a debtor's assets when a petition is filed); *id.* § 362(d)(4) (requiring relief from an automatic stay with respect to real property "by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property").

or defraud Creditor, and that scheme involved the filing of multiple bankruptcy petitions affecting the . . . real property."[13]

On December 8, 2008 Waldo filed a motion to reconsider.[14] Among other things, Waldo argued that the order should be set aside under Rule 60(b)(1) and (3) of the Federal Rules of Civil Procedure because Appellees' Proof of Claim was invalid and that counsel for New York misrepresented the identity of the creditor.[15] On December 11, 2008, the Bankruptcy Court denied confirmation of Waldo's Chapter 13 plan and dismissed the bankruptcy case.[16] The Bankruptcy Court held a hearing after which it denied Waldo's motion for reconsideration on December 22, 2008.[17]

Waldo appealed the denial on January 20, 2009.[18] However, the appeal was dismissed for lack of jurisdiction as the notice of appeal was untimely.[19] On April 30, 2009, Waldo filed another motion under Rule 60(b) seeking to set aside the Bankruptcy Court's summary judgment decision and dismissal of the Chapter 13 bankruptcy case.[20] On July 29, 2009, the Bankruptcy Court denied Waldo's motion to set aside.[21] Additionally, the Bankruptcy Court sanctioned

---

[13] Doc. 116. In addition to the summary judgment motion, Appellees filed a motion and an Amended Motion for *In-Rem* Termination of the Automatic Stay. *See* Docs. 25, 36. The Bankruptcy Court entered Judgment on the same day. Doc. 117.

[14] Doc. 121. New York filed an opposition on December 18, 2008. Doc. 129.

[15] Doc. 121; *see* Fed. R. Civ. P. 60(b) (authorizing relief from an order by reason of "mistake, inadvertence, surprise, or excusable neglect" under subsection one, or "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party" under subsection three).

[16] Doc. 126.

[17] Doc. 130. The Bankruptcy Court also denied Waldo's request to reopen the bankruptcy case. *Id.*

[18] Docs. 134, 135.

[19] Doc. 141.

[20] Doc. 144. New York filed an opposition on May 18, 2009. Doc. 146. And Waldo objected to New York's opposition. Doc. 147.

[21] Doc. 158.

Waldo, ordering that "no further motions or applications relating to the subject matter of this case shall be filed by Debtors without first obtaining authorization from the Court."[22]

On September 14, 2009, Waldo filed a request for leave to file an expedited Fair Debt Collection Practices Act motion.[23] One week later, the Bankruptcy Court denied Waldo's request.[24] On September 29, 2009, Waldo filed a request for leave to file an expedited Rule 60(b) motion, and two days later Waldo filed a request for leave to file a motion to reopen the bankruptcy case.[25] The Bankruptcy Court granted Waldo leave to file the motions, and Waldo submitted them on October 30, 2009.[26] New York objected to Waldo's motions as constituting "ongoing abuse and harassment" in Waldo's several attempts to challenge the dismissal of the bankruptcy case, and New York requested imposition of monetary sanctions.[27] On January 5, 2010, the Bankruptcy Court denied both of Waldo's motions and ordered monetary sanctions in the amount of $500 against Waldo.[28]

On January 14, 2010, Waldo appealed the decisions.[29] In his appeal, Waldo asserted that the Bankruptcy Court erred when it: (1) allowed Appellees' counsel to represent Appellees; (2) allowed New York's Proof of Claim; (3) "dropped the trial that had been initially granted";

---

[22] Doc. 158. The order gave Waldo ten days to file an objection before the sanctions became effective. *Id.*

[23] Doc. 164.

[24] Doc. 165.

[25] Docs. 167, 168.

[26] Docs. 169, 174 (Motion to Reopen), 175 (Motion to Reconsider).

[27] Doc. 178 at 3. Counsel for New York submitted a proposed order on the two motions, Doc. 179-1, and filed an Affidavit of Attorney Fees representing the hourly rate charged and time spent responding to Waldo's motion to reopen and motion for reconsideration, Doc. 180. Waldo objected to the affidavit of fees, Doc. 182, and objected to the proposed order, Doc. 183. Counsel for New York then filed an Amended Affidavit for Attorney Fees. Doc. 184.

[28] Doc. 187; Doc. 200 (transcript of hearing held November 30, 2009).

[29] Doc. 190.

(4) accepted New York's attorneys' assertions without evidence of a claim; (5) allowed the 2004 examination of Appellants; (6) granted summary judgment despite a remaining genuine material fact; (7) allowed New York to foreclose on the real property without legal documentation; (8) denied Waldo's motion to compel production of documents; (9) denied Waldo's motion to reopen the case; and (10) did not reopen the case when "an Appellee attorney said in a Response Motion that the attorney is 'of counsel' for another law firm" that benefited from the foreclosure.[30] After another hearing on July 16, 2010, the United States District Court affirmed the Bankruptcy Court's January 4, 2010 order.[31]

Nearly a decade later, on October 18, 2019, Waldo filed a motion for permission to reopen the Chapter 13 bankruptcy case under Rule 60(d)(3) due to alleged fraud upon the court.[32] The court heard oral argument from Waldo on December 4, 2019.[33] On December 30, 2019, the Bankruptcy Court denied the motion.[34]

On January 9, 2020, Waldo filed a request for "Permission that their Motion for Reconsideration be Considered."[35] Waldo asked that counsel for New York "present all verifiable

---

[30] Doc. 197. Waldo filed a motion to compel New York to produce documents. *See* Doc. 98. This motion was denied on December 9, 2008. Doc. 125. Rule 2004 of the Federal Rules of Bankruptcy Procedure authorizes the bankruptcy court, on motion of an interested party, to order an examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor," among other things.

[31] Doc. 201.

[32] Doc. 203. *See* Fed. R. Civ. P. 60(d)(3) ("This rule does not limit a court's power to . . . set aside a judgment for fraud on the court."). Waldo's motion was filed ex parte and not served on any other parties, and although the Bankruptcy Court issued a notice of hearing on the motion, it noted that "notice may not have been complete on the part of the movants." Doc. 208 at 2.

[33] *See* Docs. 206, 207, 208. No other parties participated in the hearing, and they may not have been notified. *See* Doc. 208 at 2 ("The Court notes that while it set this motion for a hearing and noticed out the hearing *sua sponte*, the Waldos did not attempt to notice other parties of interest; thus, notice may not have been complete on the part of the movants.").

[34] Docs. 207, 208.

[35] Doc. 211.

documentation and correspondence from July 1999 onward," and that "a representative from [Ocwen Federal Bank] testify at an evidentiary hearing with verifiable documentation."[36] Ocwen objected to Waldo's motion on the basis that it violated the Bankruptcy Court's order of sanctions on Waldo requiring leave to file motions and because Waldo failed to comply with Rule 60 by merely restating prior positions.[37] In addition to its procedural challenges, Ocwen also argued substantive reasons for why the motion should be denied.[38]

On March 4, 2020, the Bankruptcy Court heard argument on the motion to reconsider and issued findings of fact and conclusions of law on the record during a March 6, 2020 hearing.[39] The Bankruptcy Court determined that several factors precluded reopening the case, including the length of time the case had been closed, the lack of a benefit to Waldo, and the prejudice to New York and Ocwen.[40] The Bankruptcy Court also determined that Waldo had presented no basis for a finding of fraud upon the court.[41] It determined that Waldo's "allegations are essentially identical to those . . . made ten years ago," but now couched in terms of fraud upon the court.[42] The Bankruptcy Court concluded that Waldo raised no new legal or factual question to justify reconsideration or amendment of the December 30 order,[43] it denied the motion, and it invited counsel for Ocwen and New York to file a motion for attorney fees.[44]

---

[36] Doc. 211 at 2.

[37] Doc. 213 at 5, 6.

[38] *Id.* at 7–11.

[39] *See* Doc. 218; Docs. 216, 217. The transcript of the March 6, 2020 hearing is lodged at Doc. 240.

[40] *See generally* Doc. 240.

[41] *See* Doc. 211 at 19–21.

[42] Doc. 240 at 19.

[43] Doc. 240 at 20.

[44] Doc. 218. Following briefing and Ocwen's additional request for punitive sanctions, the Bankruptcy Court awarded fees and declined to impose additional sanctions. Doc. 235; *see* Docs. 222, 227, 230.

On March 20, 2020, Waldo filed the notice of appeal currently before this court challenging the Bankruptcy Court's March 6 order.[45] In addition to many of the same issues Waldo sought to present in the 2010 appeal, Waldo asserts that the Bankruptcy Court: ignored the claim of fraud upon the court, was not concerned about evidence of fraud, ignored a request for evidentiary hearing, and "allowed Appellants' Due Process rights to be violated."[46] On May 1, 2020, the Bankruptcy Court ordered Waldo to pay Ocwen's attorney fees related to the October 2019 motion to reconsider.[47]

## ISSUES AND STANDARDS OF REVIEW

Waldo nominally asserts twelve issues on appeal.[48] In issues 2, 3, 4, 7, 8, 11, and 12, Waldo challenges the underlying 2008 to 2010 bankruptcy proceedings, not the Bankruptcy Court's 2019 and 2020 orders.[49] This court's "appellate review is limited to final judgments or parts thereof that are designated in the notice of appeal."[50] Accordingly, these issues are not properly before the court. Additionally, as addressed below, Waldo did not file a supplemental notice of appeal and therefore this court lacks jurisdiction to review issue 10, Waldo's challenge to the Bankruptcy Court's award of attorney fees.

Waldo's issues 1, 5, 6, and 9 challenge the Bankruptcy Court's denial of his motion to set aside the 2008 summary judgment and reopen the proceedings based upon fraud upon the

---

[45] Doc. 220.

[46] *See* Doc. 228. Pursuant to 28 U.S.C. § 158(c)(1), the United States Bankruptcy Appellate Panel of the Tenth Circuit transferred the appeal to this court for resolution. Doc. 231.

[47] *See* Doc. 235; ECF No. 1.

[48] ECF No. 15 at 4–7.

[49] *See id.*

[50] *Cunico v. Pueblo Sch. Dist. No. 60*, 917 F.2d 431, 444 (10th Cir. 1990) (citing Fed. R. App. P. 3(c)). Waldo designates the March 6, 2020 order of the Bankruptcy Court as the order appealed from. ECF No. 1; *see* Fed. R. App. P. 4(a)(1)(A).

court.[51] "Generally, a bankruptcy court's decision on a motion to reopen a closed case under 11 U.S.C. § 350(b) is reviewed for abuse of discretion."[52] "While the decision to reopen remains within the broad discretion of the bankruptcy court, it must be tethered to the parameters of § 350(b), or it is an abuse of discretion."[53]

Waldo also requests review of the Bankruptcy Court's related decision denying a motion to reconsider.[54] "The bankruptcy court's denial of Debtor's motion to reconsider is subject to the abuse of discretion standard of review."[55] Generally, a court exceeds its afforded discretion if its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable."[56] That is, the court's decision "will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[57]

## ANALYSIS

As an initial matter, the court first addresses the three motions filed in this appellate proceeding.[58] Waldo asks that Appellees and their counsel be excluded from this proceeding.[59]

---

[51] *See* ECF No. 15 at 4–6.

[52] *In re Petroleum Prod. Mgmt., Inc.*, 282 B.R. 9, 13 (B.A.P. 10th Cir. 2002).

[53] *Id.* (quoting *Nintendo Co. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995)).

[54] *See* Doc. 218; *see also* Docs. 211, 213, 215.

[55] *In re Rafter Seven Ranches LP*, 362 B.R. 25, 28 (B.A.P. 10th Cir. 2007) (citing *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)), *aff'd sub nom. In re Rafter Seven Ranches L.P.*, 546 F.3d 1194 (10th Cir. 2008).

[56] *Black v. M & W Gear Co.*, 269 F.3d 1220, 1227 (10th Cir. 2001) (citation and internal quotation marks omitted).

[57] *In re Utah Aircraft All.*, 342 B.R. 327, 331 (B.A.P. 10th Cir. 2006) (citation and internal quotation marks omitted).

[58] Motion to Exclude Appellees and their Counsel, ECF No. 5; Motion to Disallow Judicial Notice, ECF No. 9; Motion to Disallow Corporate Disclosure, ECF No. 10.

[59] ECF No. 5.

Waldo also requests that the court disallow Appellees' requests for judicial notice.[60] Relatedly, Waldo asks the court disallow Appellees' corporate disclosure statement.[61] After addressing these motions, the court will turn to the issues presented on appeal.

### A. Waldo Does Not Provide a Basis to Bar Appellees From Participating in this Appellate Proceeding.

Waldo requests that Appellees Ocwen and New York be excluded from this appellate proceeding because they lack Article III standing.[62] Because constitutional standing limits federal court jurisdiction, the issue "is a jurisdictional matter that must be addressed even if raised for the first time on appeal."[63] However, "the question of who is (are) the real party (parties) in interest, . . . is not a jurisdictional issue."[64] To the extent that Waldo raises a real-party-in-interest issue in this appeal, that issue was not before the Bankruptcy Court.[65] "[S]ound policy supports the proposition that an appellate court will not consider an issue raised for the first time on appeal."[66] As to the relief Waldo requests in his motion, Waldo fails to identify any applicable

---

[60] ECF No. 9.

[61] ECF No. 10.

[62] ECF No. 5. Waldo also raises this issue in his principal brief. *See* ECF No. 15 at 3–4 ("Judge Thurman lacked subject matter jurisdiction on Claim 4-2, as [Bank of New York Trust Company], Bank of New York Mellon Trust Company], Ocwen, and Mr. Middlemas lacked the requisite Article III Standing.").

[63] *First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d 884, 889 (10th Cir. 2018).

[64] *Id.* (citing *Norris v. Causey*, 869 F.3d 360, 366–67 (5th Cir. 2017)).

[65] Waldo's motion to reopen the bankruptcy proceedings was based on a theory of fraud upon the court, or fraud "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. Doc. 203 (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)). Even assuming, without deciding, that Waldo asserted a real-party-in-interest issue in the bankruptcy court, the question before the court was whether "the impartial functions of the court have been directly corrupted," *Bulloch*, 763 F.2d at 1121, not whether the wrong party filed a proof claim. In contrast, a real-party-in-interest issue "presents a merits question: 'who, according to the governing substantive law, is entitled to enforce the right?'" *Norris*, 869 F.3d at 366. "An argument that the plaintiff is not the real party in interest is an affirmative defense that must be asserted with reasonable promptness." *Id.* at 367.

[66] *Gorman v. Carpenters' & Millwrights' Health Benefit Trust Fund*, 410 F.3d 1194, 1202 (10th Cir. 2005).

legal authority for exclusion of his adversaries in the instant proceeding. Waldo's request also defies logic: Waldo cannot appeal a decision involving certain parties and then argue that those parties may not be heard or defend themselves before this court. The motion to exclude Appellees in this proceeding is therefore denied.

Nevertheless, because Waldo argues a lack of constitutional standing in the Bankruptcy Court, it must be addressed in this appeal, even though it cannot support his motion to exclude.[67] Accordingly, the court will address the substance of Waldo's standing claim later in this decision.

## B. Ocwen's Request for Judicial Notice is Granted.

New York and Ocwen request that the court take judicial notice of eighteen state and federal court filings and orders.[68] In Waldo's second motion he requests an order disallowing the requested judicial notice.[69]

Under Rule 201 of the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[70] "Judicial notice may be taken at any time, including on appeal."[71] This rule "allows the court to take judicial notice of its own files and

---

[67] *See First Am. Title*, 906 F.3d at 889 (noting that "constitutional standing is a jurisdictional matter that must be addressed even if raised for the first time on appeal.").

[68] ECF No. 6. Appellees request judicial notice of filings, orders, and dockets in Utah state courts, the United States District Court, the United States Bankruptcy Court, the Tenth Circuit Court of Appeals, and the United States Supreme Court. *See id.*

[69] ECF No. 9.

[70] Fed. R. Evid. 201(b).

[71] *United States v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999); *see* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.").

records, as well as facts which are a matter of public record."[72] "However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein."[73]

New York asserts, and Waldo does not dispute, that each of the eighteen documents submitted by Appellees is a record of the state or federal judiciary. The documents are not subject to reasonable dispute and thus are proper subjects for judicial notice. Indeed, Waldo musters no cognizable challenge to consideration of these documents. Accordingly, the court grants New York's request for judicial notice and denies Waldo's motion. Where necessary, the documents will be considered for their content, but "not to prove the truth of matters asserted therein."[74]

Relatedly, New York requests that this appeal be summarily dismissed because Waldo failed to file a timely principal brief and because Waldo "filed three frivolous Motions in this matter, following their established pattern of unduly multiplying litigation."[75] Although the court is sympathetic to the necessity of responding to multiple motions and arguments, such a drastic sanction may be appropriate only after notice and opportunity to be heard.[76] The court therefore denies New York's request for summary dismissal.

---

[72] *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (citation and internal quotation marks omitted).

[73] *Id.* (brackets and internal quotation marks omitted) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir.2002)).

[74] *Id.*

[75] Opposition to Motion to Disallow Judicial Notice, ECF No. 14 at 3–4.

[76] *See United States v. Samuels*, 417 F. App'x 809, 812 n.1 (10th Cir. 2011) ("We have long held that where a party has engaged in a pattern of litigation activity which is manifestly abusive, restrictions are appropriate, but only after notice and an opportunity to respond are given."). In an appellate court capacity, "[t]his court has the inherent power to impose sanctions that are necessary to regulate its docket, promote judicial efficiency, and deter frivolous filings." *Mann v. Boatright*, 477 F.3d 1140, 1150 (10th Cir. 2007). To be sure, the court can discern no non-frivolous basis for any of Waldo's three motions filed in this appeal. Each motion is fundamentally based on his arguments, raised multiple times throughout the underlying bankruptcy proceedings and asserted again in substance on appeal, that Appellees either did not exist or did not have a protectable property interest in his former home. The court notes that Appellants have been placed on the restricted filer list in the District of Utah. *See Waldo v. Ocwen*, 2:10-cv-00928-CW, ECF Nos. 21, 31, 37, 55. Because the instant appeal came to this court by transfer and not by Waldo's original civil filing in this court, the court opted not to strictly enforce the local filer restrictions in this appeal.

### C.  New York and Ocwen's Corporate Disclosure Statements Are Appropriate.

In his third motion, Waldo asks the court to disallow the Corporate Disclosure Statement of PHH Mortgage.[77] In its corporate disclosure statement, PHH Mortgage Corporation asserts that it is the successor to Ocwen Loan Servicing, LLC, and it provides the disclosures required by Rule 7.1 of the Federal Rules of Civil Procedure.[78] Waldo offers no legal or factual support for disregarding the required disclosure, but instead registers his disagreement with the implication that PHH Mortgage Corporation purchased Ocwen.[79] The motion is denied.

### D.  This Court Lacks Jurisdiction to Review the Bankruptcy Court's Attorney Fees Decision.

Turning to the decision appealed from, the court first must determine the extent of its jurisdiction.[80] "It is well established that "a timely-filed notice of appeal is mandatory and jurisdictional."[81] The notice of appeal must "designate the judgment, order, or part thereof being appealed."[82] "The appropriate judicial unit for application of . . . finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition."[83]

---

[77] ECF No. 10.

[78] Corporate Disclosure Statement, ECF No. 8; *see* Fed. R. Civ. P. 7.1(a) (requiring that nongovernmental corporate parties identify "any parent corporation and any publicly held corporation owning 10% or more of its stock," or to state that "there is no such corporation").

[79] *See* ECF No. 10 at 1.

[80] *See Semtner v. Group Health Serv.*, 129 F.3d 1390, 1392 (10th Cir.1997).

[81] *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1008 (10th Cir. 2018) (brackets and internal quotation marks omitted) (quoting *Yost v. Stout*, 607 F.3d 1239, 1242 (10th Cir. 2010)).

[82] Fed. R. App. P. 3(c)(1)(B).

[83] *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010) (brackets, citation, and internal quotation marks omitted).

On March 20, 2020, Waldo filed the Notice of Appeal challenging the Bankruptcy Court's March 6, 2020 order denying the motion for reconsideration.[84] The March 6 order operated to finally resolve the motion for reconsideration. The discrete controversy raised in this case was whether the case should be reopened. The Bankruptcy Court answered the question in the negative on March 6, 2020. Waldo timely filed a Notice of Appeal on March 20, 2020.[85]

The Bankruptcy Court's March 6 Order also granted counsel for Appellees leave to file a motion for attorney fees.[86] "[A] petition for attorney's fees is considered 'collateral to and separate from' the decision on the case's merits."[87] Accordingly, the Tenth Circuit has held that "a supplemental notice of appeal is required" to confer jurisdiction upon the appellate court over an attorney fees issue "that becomes final subsequent to the initial notice of appeal."[88] An order awarding attorney fees "is not final until reduced to a sum certain."[89]

On March 20, 2020, the same day Waldo filed the notice of appeal, counsel for Ocwen and New York filed a motion requesting an award of attorney fees.[90] The Bankruptcy Court scheduled a hearing for April 22, 2020.[91] Waldo filed a response on April 2, 2020, and Ocwen filed a reply on April 7, 2020.[92] The Bankruptcy Court stated its findings and conclusion on the

---

[84] Doc. 220; Doc. 218.

[85] Doc. 220. *See* Fed. R. Bankr. P. 8002(a)(1) (establishing a fourteen-day period within which a notice of appeal must be filed following entry of an order).

[86] Doc 218.

[87] *Graham v. Hartford Life And Accident Ins. Co.*, 501 F.3d 1153, 1163 n.11 (10th Cir. 2007) (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988)).

[88] *See E.E.O.C. v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1250 (10th Cir. 1999).

[89] *Ellis v. CAC Fin. Corp.*, 6 F. App'x 765, 768 (10th Cir. 2001) (unpublished).

[90] Docs. 222, 224.

[91] Doc. 223.

[92] Docs. 227, 230.

record at the April 22 hearing and issued a written order granting attorney fees on April 30, 2020.[93] The Bankruptcy Court ordered attorney fees for Ocwen in a sum certain on April 30, 2020.[94] Because Waldo did not file a supplemental notice of appeal, this court lacks jurisdiction to review the April 30 order.

### E.   The Bankruptcy Court Did Not Exceed Its Discretion When It Denied the Motion to Reopen the Bankruptcy Case.

Before addressing the Bankruptcy Court's decision, this court will address Waldo's standing argument raised for the first time on appeal. Although styled as an Article III standing issue, Waldo's argument is that New York and Ocwen were not proper parties in interest in the 2008 bankruptcy proceedings.[95] Specifically, Waldo argues that the Proof of Claim submitted by New York and Ocwen in 2008 was invalid because "[n]either [Bank of New York Mellon Trust Company] nor [Bank of New York Trust Company] had a legitimate interest in the Waldos' 2008 bankruptcy."[96] He contends New York "was not in business at the time of the amended filing."[97] Put simply, Waldo is just recharacterizing his old and tested arguments—long ago raised and disposed of. In 2008, the Bankruptcy Court found that the Bank of New York Mellon Trust Company, NA, was the beneficiary of Waldo's promissory note.[98] And the court determined Ocwen Loan Servicing, LLC was the loan servicer.[99] Although he now contends Ocwen and New

---

[93] Doc. 235. The Bankruptcy Court signed the attorney fees order on April 30, 2020 and filed the order on May 1, 2020. *See id.*

[94] Doc. 235.

[95] ECF No. 5 at 1 ("Appellants make this Motion to Exclude BNYM and Ocwen as they were never a legitimate part of the Waldos' Bankruptcy, and, as such, not really interested parties.").

[96] *Id.* at 3.

[97] *Id.*

[98] Doc. 92 at 3; *see* Doc. 116 (adopting as its findings of fact the statements of undisputed material facts asserted by Ocwen and New York in their motion for summary judgment).

[99] Doc. 92.

York had no protectable interest and thus no injury for purposes of determining standing, that argument is wholly unsupported by the record. Thus, Waldo presents no cognizable standing argument.

Relatedly, Waldo's motion to reopen the bankruptcy proceedings was based on a theory of fraud upon the court, or fraud "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury."[100] The Bankruptcy Court found no fraud upon the court and determined that reopening the case was unwarranted.[101] That is the decision Waldo asks this court to review on appeal.[102] The question before the Bankruptcy Court was not whether New York or Ocwen were entitled to enforce claims against the bankruptcy estate in 2008, but whether "the impartial functions of the court have been directly corrupted" such that its judgment should be set aside.[103] Waldo admitted this, representing that "the Court case, while involving Appellants and other parties, was not about the Appellants, but about 'Fraud upon the Court.'"[104] Unlike a true standing question, a real-party-in-interest question is not jurisdictional but constitutes an affirmative defense that must be raised

---

[100] Doc. 203 (quoting *Bulloch*, 763 F.2d at 1121).

[101] Doc. 208.

[102] This is in addition to the later decision denying amendment under Rule 59 that is addressed below.

[103] *Bulloch*, 763 F.2d at 1121; *see also First Am. Title*, 906 F.3d at 890 (observing that questions about what entity could properly speak for another "raises the question of who is (are) the real party (parties) in interest, which is not a jurisdictional issue"); *Norris*, 869 F.3d at 366 (citation and internal quotation marks omitted) (noting that a real-party-in-interest issue "presents a merits question: who, according to the governing substantive law, is entitled to enforce the right?" (citation and internal quotation marks omitted)); *id.* at 367 ("An argument that the plaintiff is not the real party in interest is an affirmative defense that must be asserted with reasonable promptness.").

[104] Doc. 15 at 11.

first in the trial court.[105] Waldo's real-party-in-interest issue was not raised or addressed in the Bankruptcy Court and it will not be entertained for the first time on appeal.[106]

Primarily at issue in this appeal is whether the Bankruptcy Court exceeded its discretion when it denied Waldo's motion to reopen the bankruptcy proceedings. Approximately a decade after the last activity in his dismissed bankruptcy case, Waldo filed an ex parte motion to reopen the proceedings citing fraud upon the court under Rule 60(d)(3) of the Federal Rules of Civil Procedure.[107] The Bankruptcy Court held a hearing on December 4, 2019 and, other than Appellants, no other parties participated.[108] In its December 30, 2019 decision, the Bankruptcy Court limited its discussion to the question of reopening the proceedings, because "[a]ny relief from the Court's [2008] summary judgment decision would be premised on the Court reopening the bankruptcy case and would need to be addressed at an evidentiary hearing."[109]

Section 350 of the Bankruptcy Code requires that a bankruptcy case be closed "[a]fter an estate is fully administered and the court has discharged the trustee."[110] It authorizes reopening of a closed case "to administer assets, to accord relief to the debtor, or for other cause."[111] Because the word "'reopened' used in § 350(b) obviously relates to the word 'closed' used in the same

---

[105] *See First Am. Title*, 906 F.3d at 890.

[106] *See Gorman*, 410 F.3d at 1202.

[107] Doc. 203; *see* Doc. 201.

[108] Doc. 208 at 5.

[109] *Id.*

[110] 11 U.S.C. § 350(a).

[111] 11 U.S.C. § 350(b). The Tenth Circuit has expressed no doubt that "if Rule 60(b) relief was available and warranted, the court was justified in reopening the [bankruptcy] case for 'cause.'" *In re Woods*, 173 F.3d 770, 778 (10th Cir. 1999).

section," a bankruptcy case "cannot be reopened unless it has been closed."[112] "A case that is dismissed is fundamentally different from a case that is closed."[113] "Closing a case contemplates full estate administration and the completion of the bankruptcy process, whereas dismissing a case restores the assets and parties to their prepetition status, as if the case had never been filed."[114]

Waldo's bankruptcy petition was dismissed on December 11, 2008.[115] Because the proposed bankruptcy plan was denied and no assets were administered, Waldo's dismissed case "cannot be reopened under § 350(b)."[116] Nevertheless, the case may be reopened under Rule 60 if the dismissal is set aside. Waldo raised, and the Bankruptcy Court addressed, a fraud upon the court allegation in its analysis. The fraud upon the court argument is considered below.

However, even assuming, without deciding, that Section 350 may be employed under the circumstances to reopen Waldo's bankruptcy case, the Bankruptcy Court evaluated the appropriate factors and did not exceed its discretion in denying the motion.

When considering motions to reopen, bankruptcy courts evaluate several factors, including "(1) the length of time that the case was closed; (2) the nature of the parties' dispute; (3) whether a non-bankruptcy forum has the ability to determine the issues submitted for consideration; and (4) whether any parties would be prejudiced if the case were or were not

---

[112] *In re Mitchell*, 2012 WL 5995443, at *9 (10th Cir. BAP (Colo.) Dec. 3, 2012) (unpublished) (internal quotation marks omitted) (quoting *In re Income Prop. Builders, Inc.*, 699 F.2d 963, 965 (9th Cir. 1982)), *aff'd*, 554 F. App'x 756 (10th Cir. 2014).

[113] *Id.* at *9.

[114] *Id.*

[115] Doc. 126.

[116] *In re Mitchell*, 2012 WL 5995443, at *9.

reopened."[117] Courts have also considered (5) the extent of the benefit to any party by reopening; and (6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.[118] These factors are reviewed below as well as the allegation of fraud upon the court.[119]

### 1. The Length of Time the Case Was Closed.

Waldo's bankruptcy case was closed and saw no activity for nearly a decade.[120] In his motion to reopen the proceedings, Waldo asserted that he had "gone back through Bankruptcy documents of this case" and other court proceedings, and he "concluded that what transpired in [the] Bankruptcy proceedings was nothing more [than] a calculated move by the opposing parties to use any means to evict the Waldos from their home, even if it involved misleading the court to do so."[121] Specifically, Waldo contended that a Colorado law firm's name came up in some proceedings, but was never added as a legal entity representing any party in his 2008 Bankruptcy Case.[122] He also stated that the Bank of New York Mellon Trust Company told him that it never owned the Loan or the mortgaged property and thus, Waldo argues, it could not have been a party to the Bankruptcy Case.[123] Additionally, Waldo challenged New York's proof of claim filed

---

[117] *In re Soldier Summit Recreation & Dev. Co., L.L.C.*, 2014 WL 98701, at *2 (Bankr. D. Utah Jan. 10, 2014) (unpublished); *see also In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005) (observing that the availability of relief in another forum, presence of parties not subject to the court's jurisdiction, and passage of time—seven years—are permissible factors to consider in a motion to reopen a bankruptcy case).

[118] *See Soldier Summit*, 2014 WL 98701; *see also In re Atari, Inc.*, 2016 WL 1618346 (S.D.N.Y Bankr. 2016).

[119] Doc. 208 at 6.

[120] *Id.*.

[121] Doc. 203 at 2, 3.

[122] *Id.* at 2.

[123] *Id.*

in 2008, questioned whether New York perfected its claim in 2008, and argued a fraudulent mortgage assignment was used to foreclose the property in 2009.[124]

As the Bankruptcy Court correctly observed, the facts Waldo asserted in support of reopening the case "not only could have but should have been presented earlier than ten years after the case closed."[125] Indeed, some had been presented earlier and rejected. For example, in his August 1, 2008 objection to New York's proof of claim, Waldo argued that Ocwen assigned the trust deed under an improper power of attorney.[126] In September 2008, Waldo contended that the December 29, 1999 assignment of the trust deed was "clearly a fraud" and that an October 6, 2003 assignment was "highly suspect."[127] Because New York's February 1, 2008 assignment allegedly lacked documentation or exhibit, Waldo argued, this assignment too was problematic.[128] If not identical, these earlier arguments closely mirror Waldo's new arguments raised in the motion to reopen. The Bankruptcy Court acted well within its discretion when it rejected Waldo's repackaging of arguments that were raised and rejected more than a decade ago. Waldo's lengthy delay in bringing the motion to reopen was unreasonable under the circumstances, particularly in light of Waldo's other, similar motions in which he asserted fraud and fraudulent behavior on the part of Ocwen and New York.[129]

---

[124] *Id.* at 4–5, 6.

[125] Doc. 208 at 7.

[126] *See generally* Doc. 20.

[127] Doc. 53 at 2, 3.

[128] *Id.* at 3.

[129] Doc. 208 at 6–7.

Relatedly, Waldo contends that the Bankruptcy Court erred in focusing on the passage of time.[130] Although time does not limit setting aside a judgment on the basis of fraud upon the court, it is a factor relevant to reopening proceedings and the Bankruptcy Court properly considered it for that purpose.[131]

### 2.   *The Nature of the Parties' Dispute.*

The nature of Waldo's dispute is fundamentally a concern about accuracy with respect to the chain of title of the deed to property. The Bankruptcy Court properly concluded that this factor did not support reopening the proceedings.

Waldo contends that questions persist about the title to his property that sold in foreclosure in 2009 and that the bankruptcy claim filed by Ocwen and New York was invalid. He frames these arguments as alleged frauds upon the court and subject matter jurisdiction issues.[132] However, the core dispute is the validity of the creditors' interests in the real property. That issue was raised and resolved years ago in the original proceeding.[133] The Bankruptcy Court properly concluded that this factor weighed against reopening the case.

### 3.   *The Ability of a Non-Bankruptcy Forum to Determine the Issues.*

---

[130] ECF No. 15 at 5. Waldo also argues in Issue 5 that the Bankruptcy Court ignored his citation to *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). ECF No. 15 at 5. Although the case involved fraud upon the court, the question in *Hazel-Atlas* was whether the Courts of Appeals had the power, upon proof of fraud upon the court, "to vacate its own judgment entered at a prior term and direct vacation of a District Court's decree entered pursuant to the Circuit Court of Appeals' mandate." *Hazel-Atlas*, 322 U.S. at 239. This question has no bearing on Waldo's claims.

[131] *See United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (observing that "[t]here is no time limit" for proceedings on fraud upon the court claims).

[132] *See* ECF No. 15 at 3(asserting that Ocwen's bankruptcy notice of claim (claim 4-1) was fraudulent because "[t]here was no Power of Attorney attached, and Ocwen was no longer involved as a servicer with the Appellants' mortgage").

[133] In his recent challenges, Waldo suggests that the Bankruptcy Court's dismissal of the bankruptcy petition is void due to lack of subject matter jurisdiction or fraud upon the court.

The Bankruptcy Court noted that Waldo expressed an intent to file claims in other courts with allegations connected to the facts alleged in the motion to reopen.[134] Waldo stated he would be filing claims in other courts similar to those alleged in his motion.[135] Specifically, Waldo indicated a finding of fraud in the Bankruptcy Court would help persuade other courts to do the same in Waldo's pursuit of fraud claims.[136] The Bankruptcy Court stated that "[t]he sole basis, it appears, for the Waldos coming before this Court is to obtain a ruling that would then be used to persuade other courts."[137]

Generally, the Bankruptcy Court receives referral of limited cases arising under the United States Bankruptcy Code.[138] "A bankruptcy judge may also hear a proceeding that is not a core proceeding but that is otherwise 'related to' a case under title 11,"[139] with the caveat that it "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be determined by the district judge."[140] In the context of a decision to reopen a bankruptcy proceeding, then, the question of whether the bankruptcy court is the proper forum is not insignificant. Here, the Bankruptcy Court did not exceed its discretion when it determined that the availability of other venues weighed against reopening the proceedings.[141]

    *4. The Prejudice to Other Parties.*

---

[134] Doc. 208 at 11.

[135] *Id.*

[136] *Id.*

[137] *Id.* at 11–12.

[138] *See generally* 28 U.S.C. § 1334.

[139] *In re Midgard Corp.*, 204 B.R. 764, 771 (B.A.P. 10th Cir. 1997).

[140] *Id.* (ellipsis and internal quotation marks omitted) (quoting 28 U.S.C. § 157(c)(1)).

[141] Doc. 208 at 11–12.

Considering prejudice, the Bankruptcy Court noted that the issues Waldo raised in the motion to reopen had already been "heavily litigated."[142] Because of the decade-long delay, the general costs of litigation, and the duplicative nature of the allegations, the Bankruptcy Court concluded that reopening the case would prejudice Ocwen and New York.[143] "To continue to have Ocwen and the Bank of New York relitigate the same issues premised under a thinly veiled fraud upon the court claim could well be prejudicial to them for financial and non-financial reasons."[144] Any benefit to Waldo such as gaining allegedly missing documents would be minimal "and heavily outweighed by the prejudice the other parties would incur."[145] The Bankruptcy Court's decision is not premised on an erroneous conclusion of law or clearly erroneous finding of fact.[146]

     5. *The Extent of Benefit to Any Party.*

The Bankruptcy Court determined that the benefit to Waldo, if any, from reopening the case would be nominal.[147] At best, reopening the case may allow for an evidentiary hearing and a possible order setting aside the 2008 summary judgment motion. At least in theory, this process might put documents in Waldo's hands or provide some testimony filling in some of the alleged gaps in the chain of title to the property sold in foreclosure. But, as explained below, neither this information nor reopening the case would deliver the property back to Waldo.[148] Indeed, the

---

[142] *Id.* at 12.

[143] *Id.*

[144] *Id.*

[145] *Id.* at 12–13.

[146] *In re Utah Aircraft All.*, 342 B.R. 327, 331 (B.A.P. 10th Cir. 2006).

[147] Doc. 208 at 12–13.

[148] *Id.*

benefits to reopening would be nominal. The Bankruptcy Court properly concluded that this factor weighed against reopening the case.

### 6. The Availability of Relief.

The Bankruptcy Court considered whether any relief was available to Waldo in reopening the bankruptcy case.[149] In 2008, the Bankruptcy Court determined that Waldo filed the bankruptcy petition "as part of a scheme to delay, hinder, or defraud Creditor, and that scheme involved the filing of multiple bankruptcy petitions affecting [the Property]."[150] The court accepted Ocwen and New York's proof of claim to an interest in the property and it afforded them relief from the bankruptcy automatic stay.[151] The Bankruptcy Court dismissed the bankruptcy petition.[152] Subsequently, in a process in which the Bankruptcy Court had no involvement, the property was sold in foreclosure.

As the Bankruptcy Court observed, the bankruptcy proceedings could be reopened and the summary judgment may even be set aside, but the court could not reset the circumstances and put Waldo back into possession of the property. In 2008, the Bankruptcy Court ordered dismissal of the bankruptcy petition which necessarily put the parties back into the relative positions they occupied prior to the proceedings. Without a bankruptcy case or automatic stay, Ocwen and New York proceeded to foreclose on their interest in the property.[153] As both parties have indicated, Waldo's home was sold in foreclosure and the Waldos were evicted.[154] The foreclosure sale and

---

[149] *Id.* at 8.

[150] Doc. 116; *see* 11 U.S.C. § 362(b)(4).

[151] *See* Doc. 116.

[152] Doc. 126.

[153] *See* Doc. 208 at 2; ECF No. 18 at 2.

[154] *See* Doc. 208 at 2 ("The Waldos lost their house to foreclosure in 2009."); *id.* at 4, 12–13; *see also* ECF No. 15 at 9 (asserting that Appellees' had "only one objective" in the bankruptcy, "to do anything necessary to get the

subsequent eviction did not involve the Bankruptcy Court. Put simply, no relief was available

even if Waldo was successful in reviving the case. Accordingly, "it is clear at the outset that

reopening the case could not afford the movant any relief such that reopening would be futile and

a waste of judicial resources."[155]

In sum, the Bankruptcy Court considered several factors and determined that they all

weighed against reopening the case. The decision was tethered to the parameters of § 350(b),

specifically whether reopening the case was necessary "for other cause."[156] Accordingly, this

court concludes that the Bankruptcy Court did not exceed its discretion when it denied Waldo's

motion to reopen the bankruptcy case.

### 7.   *Fraud Upon the Court.*

Although not a factor analyzed for purposes of Section 350, the Bankruptcy Court also

considered the Waldo's allegations of fraud upon the court.[157]

Waldo contends that the Bankruptcy Court "ignored" his fraud upon the court

argument.[158] Although it focused its analysis on whether the case should be reopened, the record

plainly reflects the Bankruptcy Court's consideration of the fraud upon the court argument.[159]

---

Appellants' bankruptcy claim ruled against them, so that the Waldos' home could be foreclosed on"); ECF No. 18 at 2 ("The foreclosure sale and eviction proceedings were completed in 2009."); ECF No. 19 at 11.

[155] *In re MacIntyre*, 2019 WL 1035683, at *3 (10th Cir. BAP (Colo.) Mar. 5, 2019) (unpublished) (citing *In re Schicke*, 290 B.R. 792, 798 (B.A.P. 10th Cir. 2003), *aff'd*, 97 F. App'x 249 (10th Cir. 2004)); *see Soldier Summit*, 2014 WL 98701; *see also In re Atari*, 2016 WL 1618346.

[156] Doc. 240 at 5–6; *see* 11 U.S.C. § 350(b); *In re Petroleum Prod. Mgmt.*, 282 B.R. at 13 ("While the decision to reopen remains within the broad discretion of the bankruptcy court, it must be tethered to the parameters of § 350(b), or it is an abuse of discretion." (citation and internal quotation marks omitted)).

[157] Doc. 208 at 4, 7, 9 (finding Waldo's fraud upon the court claim "overly vague" and noting that Waldo offered no "specific instance that provides some sort of notion that Ocwen or the Bank of New York committed any sort of fraudulent activity towards the court").

[158] ECF No. 15 at 4.

[159] *See, e.g.,* Doc. 208 at 9 ("The Waldos simply kept arguing that they had documents that prove Ocwen and the Bank of New York committed fraud without detailing how these documents proved fraud, and more importantly

Consequently, Waldo's first issue is plainly counter to the record on appeal and will not be addressed further.

Among other things, Waldo revived earlier arguments that Ocwen and New York had no interest in the mortgage over his home.[160] He relatedly asserted that the assignment documents were fraudulent and that Ocwen and New York could not have been parties to the bankruptcy case.[161] The participation of Ocwen and New York in the bankruptcy case, he contended, were "nothing more [than] a calculated move . . . to use any means to evict the Waldos from their home, even if it involved misleading the court to do so."[162] According to Waldo, Ocwen and New York's 2008 proof of claim constituted fraud upon the court either because Bank of New York Trust did not exist at the time, or because it had not perfected its claim, or because Ocwen never had a power of attorney document allowing it to perform legal duties as a servicer.[163] Specifically, Waldo argued:

> There are three issues regarding the Proof of Claim, which in turn constitute Fraud upon the Court: (1) The Waldos no longer had a valid mortgage contract, as Ocwen had changed the terms of the contract in 2006 without getting the modifications in writing per the Utah Statute of Frauds . . . . (2) Ocwen was no longer the Servicer. In a response to a Bar Complaint . . . a Lundberg & Associates attorney stated that a "Colorado Law Firm" had been the servicer. . . . (3) The Bank of New York Trust, NA, no longer existed when the second Proof

---

how this fraud was being perpetrated onto the Court."); *id.* at 10 ("At oral argument the Waldos reargued their original claims of fraud, misrepresentation and deception against Ocwen and the Bank of America and the chain of title issue. The Waldos did not address how fraud was committed upon the Court."); *id.* at 11 ("Even if the Waldos were able to prevail in persuading the Court that the documents Ocwen and the Bank of New York relied on were indeed fraudulent, their allegations would at most amount to fraud amongst the parties or the production of fraudulent documents; both of which do not meet the requirements needed to afford relief under Rule 60(d)(3).").

[160] *See generally* Doc. 203.

[161] Doc. 203 at 2–3.

[162] *See generally* Doc. 203.

[163] Doc. 203 at 4–7.

of Claim was submitted on August 18, 2008; thus, the Claim was not perfected as required by Rule 3001.[164]

The Bankruptcy Court rightly observed that Waldo did not "articulate or cite to a specific instance that provides some sort of notion that Ocwen or the Bank of New York committed any sort of fraudulent activity towards the Court."[165] Indeed, the record illustrates that misrepresentation, deception, and fraud have been a mainstay of Waldo's accusations against Ocwen and New York, the newest iteration merely designates them frauds upon the court.[166] However, only "the most egregious conduct" qualifies as fraud upon the court, and "[l]ess egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court."[167]

A failure to fill in the alleged gaps in a chain of title or provide the documents Waldo alleges are missing simply are not the types of fraud "directed to the judicial machinery itself."[168] Accordingly, the Bankruptcy Court acted within its discretion when it denied Waldo's motion to reopen the bankruptcy proceedings on this basis.

Waldo relatedly argues that the Bankruptcy Court erred by not setting an evidentiary hearing or authorizing discovery.[169] Having failed to present a colorable claim of fraud upon the

---

[164] *Id.* at 5–6

[165] Doc. 208 at 9.

[166] *Id.* In this way, the fraud on the court theory is similar to Waldo's Article III standing argument: both depend on facts decided and reviewed a decade or more ago and are essentially new vehicles for attempting to revive long-settled factual disputes.

[167] *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005) (internal quotation marks omitted) (quoting *Weese v. Schukman*, 98 F.3d 542, 552–53 (10th Cir. 1996)).

[168] *Id.* (internal quotation marks omitted) (quoting *Buck*, 281 F.3d at 1342).

[169] ECF No. 15 at 5 (Issue 6).

court, Waldo was not entitled to discovery or an evidentiary hearing.[170] The Bankruptcy Court did not exceed its discretion when it denied Waldo's motion, precluding discovery and an evidentiary hearing on the purported fraud upon the court.

### F. The Bankruptcy Court Did Not Exceed Its Discretion When It Denied the Motion to Reconsider.

Following the December 30, 2019 denial of his motion to reopen, Waldo asked the Bankruptcy Court to reconsider its decision.[171] The Bankruptcy Court heard oral argument on March 4, 2020 and issued a decision denying the motion from the bench on March 6, 2020.[172]

The federal rules do not explicitly recognize a motion to reconsider.[173] However, such a motion may be construed as a request for relief under Rule 59, Rule 60(b), or as a request to correct an interlocutory, non-final order.[174] "No matter how styled, a motion will be deemed a Rule 59(e) motion if it is served within the specified time period and seeks relief appropriate to

---

[170] *See Griffin v. Reid*, 259 F. App'x 121, 123 (10th Cir. 2007) (unpublished) (finding no district court abuse of discretion in denying a motion to set aside because "the motion simply lacks any colorable basis for a claim of fraud on the court because 'fraud on the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury'" (brackets, ellipsis, and internal quotation marks omitted) (quoting *Buck*, 281 F.3d at 1342).

[171] Doc. 211.

[172] *See* Doc. 240. The Bankruptcy Court entered a written order on March 6, 2020. Doc. 218. Ocwen filed an objection to Waldo's motion for reconsideration. Doc. 213. Ocwen primarily argued that Waldo's filing violated the Bankruptcy Court's July 29, 2009 sanctions order, which required Waldo to first obtain court authorization before filing "motions or applications relating to the subject matter of this case." Doc. 158.

[173] *See Price v. Philpot*, 420 F.3d 1158, 1167, 1167 n.9 (10th Cir. 2005) (noting that the Federal Rules of Civil Procedure do not authorize a motion to reconsider but observing that such a motion may be construed "as a motion to reconsider under Rule 59, Rule 60(b), or as an interlocutory motion before any final judgment").

[174] *Id.*

28

Rule 59(e) by questioning the correctness of the underlying judgment."[175] "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."[176]

On January 9, 2020, Waldo filed a motion to reconsider.[177] Because Waldo's motion to reconsider was filed within the time allowed for amendment of a judgment, the Bankruptcy Court properly evaluated the motion under Rule 59(e) of the Federal Rules of Civil Procedure.[178]

Generally, motions to reconsider "are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."[179] "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[180]

In his motion, Waldo explained his disagreement with various aspects of the Bankruptcy Court's s earlier decision denying the request to reopen the case. Among other things, Waldo argued that the benefit to reopening the case "would have justified the Waldos' arguments and

---

[175] *Hayes Fam. Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017). The Bankruptcy Court resolved Waldo's motion to reopen the bankruptcy case on December 30, 2019. Docs. 207, 208. A bankruptcy court's order denying a motion to reopen the case is a final, appealable order because it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Riazuddin*, 363 B.R. 177, 182 (B.A.P. 10th Cir. 2007) ("The bankruptcy court's Order denying the motions to reopen was a final order for purposes of [28 U.S.C. § 158(a)].").

[176] Fed. R. Civ. P. 59(e).

[177] Doc. 211.

[178] Doc. 240 at 10; *see* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); *id.* R. 54(a) (defining judgment to include "any order from which an appeal lies").

[179] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[180] *Id.*; *see* Fed. R. Civ. P. 59(e); *id.* R. 54(a).

would have opened the door . . . to the other Courts," and thus was "more than nominal."[181]
Waldo contended that counsel for appellees committed fraud upon the court by filing an
amended Proof of Claim (Claim 4-2) in 2008 on behalf of an entity that was not involved with
the mortgage on the property, and by submitting fraudulent documents.[182] Thus, according to
Waldo, Claim 4-2 "was not perfected" when originally filed in 2008.[183] Waldo asked that counsel
for Appellees "present all verifiable documentation and correspondence from July 1999 onward,"
and that "a representative from Ocwen testify at an evidentiary hearing."[184]

 Waldo used the motion to reargue issues previously addressed by the court, not to argue
an intervening change in the controlling law or new evidence previously unavailable.[185]
Accordingly, the Bankruptcy Court considered whether it needed to correct clear error or prevent
manifest injustice.[186] Through these lenses, the Bankruptcy Court addressed its earlier
determinations regarding timing,[187] benefit to any party,[188] prejudice to other parties,[189] and fraud
upon the court.[190]

 First, Waldo waited nearly a decade to bring the motion to reopen the proceedings. Waldo
asserted that he learned of the basis for his fraud upon the court argument four years prior to his

---

[181] Doc. 211 at 5.

[182] *Id.* at 6.

[183] *Id.* at 8.

[184] *Id.* at 2.

[185] *See Servants of Paraclete*, 204 F.3d at 1012.

[186] Doc. 240 at 11–12; *see Servants of Paraclete*, 204 F.3d at 1012.

[187] Doc. 211 at 4; *see* Doc. 240 at 14.

[188] Doc. 211 at 5 (arguing that a favorable fraud upon the court decision "would have justified the Waldos' arguments and would have opened the door, so to speak, to the other Courts"); *see* Doc. 240 at 15–16.

[189] Doc. 211 at 5; *see* Doc. 240 at 17.

[190] Doc. 211 at 6; *see* Doc. 240 at 18.

motion.[191] However, the arguments raised and the facts alleged in support predated the four-year

mark. For instance, Waldo questioned: why Ocwen was still involved in servicing the mortgage

after 1999; why no documentation had been produced showing involvement of Bank of New

York Trust, Bank of New York Mellon Trust Company, or Chase Manhattan Bank in the

mortgage; and why no documentation had been produced showing inclusion of the mortgage in

the IMS Home Equity Loan Owner Trust 1998-7.[192] Many of the same allegations were raised in

Waldo's objection to Claim 4-2 in 2008 and in subsequent filings.[193] Even if very unfortunate

health issues made more difficult or even prevented filing of the motion to reopen over the

previous four years, there is no justification for failure to file over the six years after the

bankruptcy case closed. Accordingly, the court did not clearly err in its determination that the

delay in filing strongly favored denying the motion to reopen.[194]

Second, Waldo took issue with Bankruptcy Court's determination that the benefits, if any,

from reopening the case would be nominal. He argued that a favorable ruling on his fraud-upon-

the-court claim would "open the door . . . to other courts."[195] But the possibility of validation of

an argument or leverage in other courts are not forms of relief available to the Waldo in this

---

[191] Doc. 211 at 4.

[192] *Id.* at 3.

[193] *See* Docs. 20, 70 (objecting to Claim 4 on the basis of invalid assignments of the deed of trust); Doc. 53 (challenging assignments of the deed of trust); Doc. 78 (alleging misrepresentations made by counsel for New York); Doc. 87 (asserting title inconsistencies and misrepresentations); Doc. 101 (same); Doc. 112 (same); Doc. 121 (same); Doc. 134 (indicating in a notice of appeal that Waldo has discovered new evidence since dismissal of the bankruptcy petition); Doc. 135 (briefing a variety of misrepresentation claims).

[194] Doc. 240 at 15.

[195] Doc. 211 at 5.

proceeding.[196] The Bankruptcy Court properly concluded that it did not clearly err in denying the motion to reopen.

Third, Waldo contended that the Bankruptcy Court erred in its determination that reopening the case would be prejudicial to Ocwen and New York.[197] In support, Waldo asserted that New York was "never a part of the Waldo's mortgage."[198] And Waldo argued that because he had submitted documents to various state and federal courts over the years, there would be less expense to Ocwen and New York.[199] Drawing Ocwen and New York back into litigation is necessarily costly, particularly when they have had no activity in this case for a decade. The property interest at issue—the only thing tying them to this case—was sold long ago. The Bankruptcy Court rightly concluded that Waldo presented no basis to alter the earlier decision denying the motion to reopen the case.

Fourth, Waldo argued that he had presented a basis for fraud upon the court. He again asserted that Ocwen and its counsel filed a fraudulent Proof of Claim 4-2 in violation of United States Code, and that they "never submitted verifiable documents."[200] Waldo contended "[t]here was no valid claim," and counsel for Ocwen and New York lacked constitutional standing.[201] For these reasons, he argued that "[t]he fraud upon the court was directed toward this Court from the beginning."[202]

---

[196] *See, e.g.*, *In re MacIntyre*, 2019 WL 1035683, at *4 (10th Cir. BAP (Colo.) Mar. 5, 2019) (unpublished) ("Issuing sanctions for violation of the discharge injunction accords relief to a debtor.").

[197] Doc. 211 at 5–6.

[198] *Id.* at 5.

[199] *Id.* at 5–6; *see* Doc. 240 at 17.

[200] Doc. 211 at 6; *see* Doc. 240 at 18.

[201] Doc. 211 at 6.

[202] *Id.*

None of these allegations, even if they were true, suggest such egregious conduct directed to the court such that "the impartial functions of the court have been directly corrupted."[203] Waldo's allegations fall far short of establishing even a colorable claim of fraud upon the court.[204] At most, the assertions would involve possible fraud between the parties, a claim outside the narrow scope of fraud upon the court under Rule 60(d)(3).[205] The Bankruptcy Court did not clearly err when it denied Waldo's motion to reopen the proceedings on the basis of fraud upon the court.

Having reviewed Waldo's arguments and its December 30, 2019 decision, the Bankruptcy Court determined that Waldo had not shown clear error or manifest injustice to support amendment of the earlier decision under Rule 59(e).[206] The decision is not arbitrary and capricious, but instead is thorough and addresses the facts asserted and applicable law. Accordingly, the Bankruptcy Court acted well within its discretion when it denied Waldo's motion to reconsider the denial of the motion to reopen.

## CONCLUSION

In this appeal, Waldo attempts to revive factual issues which were decided more than a decade ago, thinly veiling them as fraud upon the court or subject matter jurisdiction claims.

---

[203] *Buck*, 281 F.3d at 1342 (quoting *Bulloch*, 763 F.2d at 1121).

[204] Waldo presented no non-conclusory evidence of "an intent to deceive or defraud the court." *See Buck*, 281 F.3d at 1342 (internal quotation marks omitted) (quoting *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995)). Instead, he simply asserts that Ocwen, New York, and their counsel were singularly focused on evicting him from his home. *See* ECF No. 15 at 9.

[205] *See Buck*, 281 F.3d at 1342 (observing that fraud upon the court is a species of fraud more egregious than "fraud between the parties or fraudulent documents, false statements or perjury" (internal quotation marks omitted) (quoting *Bulloch*, 763 F.2d at 1121)); *see also id.* (noting that to prevail on a fraud upon the court claim, a party must show "by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment").

[206] Doc. 240 at 20–21.

They are little more than the same oft-repeated arguments Waldo has raised multiple times and which were fully and finally resolved long ago. In rejecting the most recent effort to undo the dismissal of Waldo's bankruptcy proceedings, the Bankruptcy Court acted well within its discretion. The Bankruptcy Court's decisions denying Waldo's motion to reopen and denying Waldo's motion to reconsider are affirmed. Also, because Waldo's latest motion practice was frivolous,[207] the court places Waldo back on the restricted filers list.

### ORDER

For the reasons stated in this Memorandum Opinion and Order, the orders of the Bankruptcy Court are AFFIRMED. Waldo's motion to exclude the Appellees is DENIED.[208] Appellees' request for judicial notice is GRANTED and Waldo's motion to disallow judicial notice is DENIED.[209] Waldo's motion to disallow corporate disclosure statement is DENIED.[210] Waldo's request for discovery is DENIED.[211]

Signed April 7, 2021.

BY THE COURT

_____

David Barlow
United States District Judge

---

[207] The court does not question the Waldo's deeply held feelings, but the issues raised here are without merit and the factual determinations at issue were put to rest long ago.

[208] ECF No. 5.

[209] ECF Nos. 6 (Appellees' request for judicial notice), 9 (Waldo's motion to disallow judicial notice).

[210] ECF No. 10.

[211] ECF No. 20.